**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3406 & 14-4099
_____

FRANCINE JUDON,
INDIVIDUALLY AND ON BEHALF OF A CLASS
OF SIMILARLY SITUATED PERSONS

v.

TRAVELERS PROPERTY CASUALTY COMPANY
OF AMERICA,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-14-cv-01291
District Judge: The Honorable Stewart Dalzell

Argued November 5, 2014

Before:  SMITH, HARDIMAN, and KRAUSE,
*Circuit Judges*

(Filed: December 12, 2014)

James C. Haggerty, Esq.
Suzanne T. Tighe, Esq.    [ARGUED]
Haggerty, Goldberg, Schleifer & Kupersmith
1835 Market Street
Suite 2700
Philadelphia, PA  19103


     *Counsel for Appellee*

Matthew A. Goldberg, Esq.
Joseph Kernen, Esq.        [ARGUED]
Brian M. Robinson, Esq.
DLA Piper
1650 Market Street
One Liberty Place, Suite 4900
Philadelphia, PA  19103
     *Counsel for Appellant*

_____


OPINION
_____


2

SMITH, *Circuit Judge.*

This case concerns the applicable burdens of proof for establishing jurisdiction in a removal action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. Defendant in this action, Travelers Property Casualty Co. of America ("Travelers"), removed the case to the United States District Court for the Eastern District of Pennsylvania. Plaintiff Francine Judon ("Judon") timely sought remand. The District Court found CAFA's numerosity and amount-in-controversy requirements to be in dispute and placed the burden of proof on Travelers to establish jurisdiction under CAFA by a preponderance of the evidence. Concluding that Travelers failed to meet its burden, the District Court issued an order remanding the case to state court. Travelers appealed.

As Judon's complaint unambiguously pleaded that the numerosity requirement was satisfied, the District Court should have placed the burden of proof on Judon to show, to a legal certainty, that the numerosity requirement was not satisfied. But the District Court correctly applied the preponderance of the evidence standard to the amount-in-controversy requirement. Accordingly, we will affirm in part, vacate in part, and remand to the District Court for further proceedings.

**I.**

On December 12, 2010, Judon was injured while riding in a passenger vehicle capable of transporting fewer than 16 passengers owned by Keystone Quality Transport Company and insured by Travelers.  After the accident, Judon sought first-party medical benefits under the Travelers insurance policy of $7,636.40.  Travelers paid Judon $5,000, up to the first-party medical benefits limit in the policy, but declined to pay Judon $2,636.40 for her claims over the policy limit.

On January 24, 2014, Judon filed a class-action complaint in the Court of Common Pleas of Philadelphia County.  The primary basis of Judon's complaint was that Pennsylvania law required that the Travelers policy held by Keystone offer up to $25,000 in first-party medical benefits.  Judon's complaint alleged two counts: (1) that Travelers' refusal to pay first-party medical benefits beyond $5,000 constituted breach of contract; and (2) that Travelers' denial of Judon's and other putative class members' claims was done in bad faith and in violation of 42 Pa. C.S.A. § 8371.  Judon also asserted a claim on behalf of the following class members:

> individuals injured in motor vehicle accidents who were occupants of common or contract carriers for motor vehicles capable of transporting fewer than 16 passengers insured under policies of insurance by the defendant, Travelers, and for whom first party medical expense

4

benefits were not made available in an amount up to $25,000.00 but only in an amount up to $5,000.00.

Judon further alleged that "there are hundreds of members of the class" who were "wrongfully and illegally denied payment" of first-party benefits by Travelers.

Judon sought a court order requiring Travelers to "make payment of first-party medical expense benefits in an amount up to $25,000" to Judon and class members in connection with injuries sustained in motor vehicle accidents that were covered by Travelers' policies of insurance. Further, Judon requested that the court award, to Judon and class members, first-party benefits, interest, fees, costs, treble damages, and punitive damages for acting in bad faith pursuant to 42 Pa. C.S.A. § 8371.

On February 28, 2014, Travelers timely filed a notice of removal under CAFA. Travelers argued that the proposed class met the three requirements for CAFA removal under 28 U.S.C. § 1332(d). Travelers asserted, and Judon did not contest, that the parties were minimally diverse. Travelers also contended that Judon's reference to "hundreds of members" must mean at least 200, such that the proposed class consisted of at least 100 putative class members pursuant to § 1332(d)(5). Travelers also argued that the amount in controversy exceeded $5,000,000 pursuant to § 1332(d)(2). In order

to reach that figure, Travelers asserted that the value of each putative class member's damages could amount to $20,000 (consisting of $25,000 in allegedly required first-party medical benefits minus the $5,000 in first-party medical benefits actually paid). The minimum total number of class members, 200, multiplied by the total amount each class member could be entitled to, $20,000, would yield $4,000,000 in potential compensatory damages. Trebling this amount as demanded by Judon, Travelers contended, yields an amount in controversy exceeding $5,000,000.

On March 7, 2014, Travelers filed a motion to dismiss Judon's class-action complaint arguing, *inter alia*, that Travelers' denial of Judon's medical expenses was proper under applicable Pennsylvania law. In the alternative, Travelers argued that it had an objectively reasonable basis for refusing to make payment of Judon's medical expenses and, as a result, punitive damages were not warranted.

On March 24, 2014, Judon timely filed a motion to remand, contending that as the removing party, Travelers bore the burden of establishing jurisdiction under CAFA. According to Judon, Travelers did not meet that burden because it failed to show to a legal certainty both that: (i) the amount in controversy exceeded the statutory minimum of $5,000,000; and (ii) there were more than 100 class members. In order to do so, Judon argued, Travelers must submit proof regarding the actual number

of class members and the actual amount of those putative class members' damages. Judon also argued that the potential for punitive or treble damages could not count towards the $5,000,000 amount-in-controversy requirement both because such potential damages would need to be actually translated into monetary sums for each putative class member and because Travelers had challenged the availability of punitive damages in its motion to dismiss.

The District Court granted Judon's motion to remand on June 30, 2014. The District Court reasoned that because Judon "vigorously contest[ed]" the facts Travelers relied on to establish jurisdiction, the "preponderance of the evidence standard [was] appropriate for resolving the dispute." Because the District Court reasoned that Travelers was required to "put forward proof to a reasonable probability" that jurisdiction existed under 28 U.S.C. § 1332(d), and because Travelers provided no such extrinsic evidence, the District Court remanded the case to the Court of Common Pleas of Philadelphia County. Travelers timely petitioned for review of the remand order pursuant to 28 U.S.C. § 1453(c)(1). On October 3, 2014, we granted Travelers' petition.[1]

---

[1] CAFA requires a court of appeals to "complete all action" on an appeal, "including rendering judgment not later than 60 days after the date on which such appeal

## II.

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1332(d). We exercise jurisdiction pursuant to 28 U.S.C. § 1453(c). A party asserting federal jurisdiction in a removal case bears the burden of showing "that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007); *see also Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006). Our review of issues of subject matter jurisdiction is *de novo*. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009).

## III.

---

was filed." 28 U.S.C. § 1453(c)(2). Under this 60-day deadline, our judgment should be filed no later than December 2, 2014. *See Morgan v. Gay*, 471 F.3d 469, 472 (3d Cir. 2006) (establishing that the 60-day CAFA deadline commences once the Court grants the petition for permission to appeal under § 1453(c)(2)). However, a court of appeals may "for good cause shown and in the interest of justice" extend this filing date for ten days. *Id.* at § 1453(c)(3)(B). After hearing oral argument on November 5, 2014, we concluded that giving detailed attention to the issues presented in this case in order to better instruct litigants and district courts constituted good cause to invoke the ten-day extension.

At the core of this jurisdictional challenge is the nature of the burden of proof and evidentiary standards applicable in a case removed under CAFA. CAFA confers on district courts "original jurisdiction of any civil action" in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ("numerosity requirement"). 28 U.S.C. § 1332(d)(2), (5)(B), (6); *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347 (2013).

In order to determine whether the CAFA jurisdictional requirements are satisfied, a court evaluates allegations in the complaint and a defendant's notice of removal. *Frederico*, 507 F.3d at 197; *Morgan*, 471 F.3d at 474.[2] The proper test in a CAFA removal action

---

[2] *Frederico v. Home Depot* provided that "a defendant's notice of removal serves the same function as the complaint would if filed in the district court." 507 F.3d at 197 (citing *Morgan*, 471 F.3d at 474). In *Morgan*, we noted that "[b]ecause 'the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy,' '[a] defendant's notice of removal then serves the same function as the complaint would in a suit filed in federal court.'" 471 F.3d at 474 (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)). Although it is

depends on the nature of the jurisdictional facts alleged and whether they are in dispute.

## A.

We begin by demarcating the various jurisdictional tests applicable in a CAFA removal action. In *Samuel-Bassett v. Kia Motors America, Inc.*, we closely analyzed the burden of proof for establishing the amount-in-controversy requirement under 28 U.S.C. § 1441—the general removal statute. 357 F.3d 392, 396 (3d Cir. 2004). This pre-CAFA decision reconciled two Supreme Court cases that established distinct burdens of proof to be applied depending on the nature of a party's jurisdictional challenge. *Id.* at 397–98 (reconciling *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938) with *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178 (1936)).

In *McNutt v. General Motors Acceptance Corp. of Indiana*, "a challenge to the amount in controversy had been raised in the pleadings [specifically the answer]," but "no evidence or findings in the trial court addressed that issue." *Samuel-Bassett*, 357 F.3d at 397; *McNutt*,

possible that someone reading *Frederico* out of context might assume that this statement alters the jurisdictional burdens, the quotation from *Morgan* makes clear the manner in which a defendant's notice of removal is relevant.

10

298 U.S. at 179–80.  The Supreme Court held that "the party alleging jurisdiction [must] justify his allegations by a preponderance of the evidence." *McNutt*, 298 U.S. at 189.  Accordingly, if the jurisdictional facts are challenged "in any appropriate manner," the party alleging jurisdiction "must support them by competent proof." *Id.*  Because the jurisdictional amount was in dispute and there were no adequate findings as to that issue of fact, the Supreme Court held that the district court lacked jurisdiction and the case should be dismissed for want of jurisdiction. *Id.* at 190.

By contrast, in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, after the defendant removed the case to federal court, the plaintiff amended the complaint to allege damages less than the amount necessary to create jurisdiction.  303 U.S. at 285.  Thereafter, the district court conducted a bench trial and made factual findings, stated its conclusions, and entered judgment for the plaintiff. *Id.*  The defendants appealed. *Id.*  The Seventh Circuit "refused to decide the merits on the ground that[,] as the record showed[,] respondent's claim did not equal the amount necessary to give the District Court jurisdiction." *Id.*

The Supreme Court held that the relevant test to establish jurisdiction was whether "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the

plaintiff never was entitled to recover that amount." *Id.* at 289. This rule from *Red Cab* "'does not require the removing defendant to prove to a legal certainty the plaintiff can recover [the amount in controversy]—a substantially different standard.'" *Frederico*, 507 F.3d at 195 (quoting *Valley v. State Farm Fire and Cas. Co.*, 504 F. Supp. 2d 1, 3–4 (E.D. Pa. 2006)). Instead, under the legal certainty test, "the *challenger* to subject matter jurisdiction [must] prove, to a legal certainty, that the amount in controversy *could not exceed* the statutory threshold." *Id.* at 195.

After distinguishing these cases, the *Samuel-Bassett* panel analyzed an amount in controversy that was not based on specific damages alleged in the complaint but, instead, on an *ad damnum* clause[3] that stated

_____

[3] An "*ad damnum*" clause is a "clause in a prayer for relief stating the amount of damages claimed." *Black's Law Dictionary* 40 (8th ed. 2004). This is a "customary reference point to ascertain the amount in controversy." *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir. 1999) *abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). State courts often place limits on the amount of damages that may be recited in such a clause. *Id.* In particular, Pennsylvania civil pleading rules provide that a complaint may not claim a specific amount of damages if the pleading seeks to recover unliquidated damages,

12

damages in terms of categories. 357 F.3d at 398–99. The panel applied the legal certainty test because the categories of damages, a legal question, only needed to be translated into monetary sums.[4]  *Id.* at 399.  The Court found, however, insufficient facts to support a conclusion that the amount in controversy was satisfied (specifically the "actual damages" plaintiff could recover under Pennsylvania law).  *Id.* at 400.  Because of this, the Court remanded the case for fact finding on the amount in controversy.  *Id.* at 403.  In determining which test to apply, we explained that the critical distinction between *Red Cab* and *McNutt* is whether the district court has made factual findings or instead, whether the district court is faced with "disputes over factual matters." *Id.* at 397, 398–99.

Travelers erroneously contends that such a dispute is created only where the challenging party puts forth

---

Pa. R. Civ. P. 1021(b), but must state whether the damages sought "exceed the jurisdictional amount requiring arbitration referral by local rule," Pa. R. Civ. P. 1021(c).

[4] The *Samuel-Bassett* panel treated the task of translating categories of damages into monetary sums as a legal question.  In that case, the parties did not dispute the underlying damages calculations.  357 F.3d at 398.  Where there is such a dispute, our jurisprudence dictates that *McNutt*'s preponderance of the evidence test applies.

admissible evidence.[5]  At the removal stage of an action, a jurisdictional fact in question may be "disputed" or "contested" in the pleadings.  *McNutt*, 298 U.S. at 189–90.  For example, the contested jurisdictional facts in *McNutt* were established by "the allegation in the bill of complaint as to [the] jurisdictional amount [being] traversed by the answer."  *Id.* at 190.  Because the district court "made no adequate finding upon that issue of fact, and the record contain[ed] no evidence to support the allegation of the bill," the Supreme Court concluded that the burden rested on the party seeking removal to prove that the jurisdictional amount in controversy was

---

[5] Travelers argues that Judon's challenge in her motion to remand was insufficient to create a dispute of fact.  Citing *Thornton v. United States*, 493 F.2d 164, 167 (3d Cir. 1974), Travelers contends that like a motion for summary judgment, "[a] statement in a brief or in oral argument does not constitute evidence" that would create a dispute of fact.  Not only does Travelers' argument on this point incorrectly apply our jurisprudence on the burden of proof in a CAFA removal action, it also attempts to import the detailed burden-shifting applicable to a motion for summary judgment, which generally occurs later in the course of litigation and is meant to decide whether "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56.

satisfied.  *Id.*  The Supreme Court took the same approach in *Wilson v. Republic Iron & Steel Co.*:

> "If a removal is effected, *the plaintiff may, by a motion to remand, plea, or answer, take issue with the statements in the petition [for removal]*.  If he does, the issue so arising must be heard and determined by the District Court, and at the hearing *the petitioning defendant must take and carry the burden of proof*, he being the actor in the removal proceeding."

257 U.S. 92, 97–98 (1921) (emphasis added) (citations omitted).  In distilling these cases, we make clear that a jurisdictional challenge, which creates a dispute of fact, can be raised in the pleadings (such as the answer) or on a motion for remand.  *Cf. Kaufman*, 561 F.3d at 151 (explaining that there was no fact in dispute regarding CAFA jurisdiction where the plaintiffs did "not dispute that the amount in controversy exceed[ed] $5,000,000").

*Frederico v. Home Depot* provides an example of undisputed facts in a CAFA removal action.  In that case, the defendant relied on the facts alleged in the plaintiff's complaint to establish the amount in controversy.[6]

---

[6] Although not explicitly addressed as such in *Frederico*, the jurisdictional facts pleaded in the complaint functioned as judicial admissions.  A fact asserted in a

15

*Frederico*, 507 F.3d at 197.  The plaintiff's response to

pleading, which is both unequivocal and which would normally require evidentiary proof, constitutes a judicial admission.  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377 (3d Cir. 2007), *as amended* (Oct. 12, 2007); *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (facts "expressly conceded" in a complaint constitute judicial admissions).  Judicial admissions, however, "may be withdrawn by amendment."  *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013).  If a party does not withdraw an admission, that party remains bound.  *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) (holding that a claim was foreclosed based on an admission in the plaintiff's complaint).  Because the plaintiff in *Frederico* never withdrew the jurisdictional facts alleged in her complaint, those facts functioned as admissions and were properly relied upon by the Court.  *See* 507 F.3d at 198. It is worth noting, however, that if the district court had made findings of fact, the plaintiff's subsequent amendment to her complaint would not necessarily justify application of the preponderance of the evidence standard.  *See Red Cab*, 303 U.S. at 285 (applying the legal certainty test despite the plaintiff's amending its complaint alleging an amount in controversy below the jurisdictional threshold because the district court had made findings of fact).

16

the defendant's allegations in its notice of removal "neither agree[d] with the facts alleged in the removal notice nor contest[ed] them." *Id.* at 198. Because the defendant's "argument for jurisdiction [was] based on allegations made initially by" the plaintiff, we determined that the "relevant facts [were] not expressly in dispute between the parties." *Id.* We further concluded that the case did not present a situation where the court should "'still insist that the jurisdictional facts be established or the case be dismissed'" and "'demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" *Id.* (quoting *McNutt*, 298 U.S. at 189).

Therefore, we applied *Red Cab*'s legal certainty test to the facts alleged by the plaintiff in her complaint and incorporated by the defendant in its notice of removal. *Id.* We found that the plaintiff's compensatory and punitive damages totaled $1,722.84, and that the applicable attorney's fees, using the Federal Judicial Center's median percentage recovery, could amount to $516.85, bringing the plaintiff's "total damages to $2,239.69." *Id.* at 199. The plaintiff had alleged that there were "tens of hundreds of thousands" of class members. Using these two figures, we divided $5,000,000 by $2,239.69 that produced "a requisite class size of 2,233," which was well within the plaintiff's allegations regarding the number of class members. *Id.*

This analysis left us satisfied that the *Red Cab* legal certainty test was met. *Id.*

Thus where there are contested facts related to jurisdiction the preponderance of the evidence standard from *McNutt* applies, unless a district court has previously evaluated evidence and made factual findings. *Samuel-Bassett*, 357 F.3d at 398. "Once findings of fact have been made, the court may determine whether *Red Cab*'s 'legal certainty' test for jurisdiction has been met." *Id.* at 398; *see also Frederico*, 507 F.3d at 194.[7] And, in turn, *Red Cab*'s legal certainty test also applies where the

[7] After our decision in *Frederico*, Congress enacted the Federal Courts Jurisdiction and Venue Clarification Act of 2011. Pub. L. 112–63, 125 Stat. 758 (Dec. 7, 2011). It provides that for a civil action with jurisdiction conferred by 28 U.S.C. § 1332(a) (diversity jurisdiction), "removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds*, by a preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2)(B) (emphasis added). This may limit the application of *Red Cab* in some traditional diversity actions. However, because CAFA jurisdiction is predicated on 28 U.S.C. § 1332(d), *Frederico*'s explanation of the preponderance of the evidence and legal certainty tests remain undisturbed.

18

jurisdictional facts are not contested or the amount in controversy is "determined in whole or in part" by applicable law. *Id.* at 397–98. In applying *Red Cab*, "the preponderance of the evidence standard [has] no utility" and we ask whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed. *Id.*

Thus, our jurisprudence establishes at least two distinct tests potentially relevant here with regard to removal jurisdiction in a CAFA case, whose application is dependent on the nature of the challenge and the pertinent facts of the case.[8] In summary:

---

[8] In *Morgan v. Gay*, we analyzed a novel scenario in a removal action under CAFA that gave rise to a third test: how does a defendant establish CAFA jurisdiction where a plaintiff expressly limits the amount in controversy below the $5,000,000 jurisdictional threshold? Our holding in *Morgan* was two-fold: First, we held that "[u]nder CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy requirement is satisfied." 471 F.3d at 473. Second, we stated that in order to remove an action to federal court where the amount in controversy is alleged to be below the $5,000,000 threshold, "defendants bear the burden to prove to a legal certainty that the complaint exceeds the statutory amount in controversy requirement." *Id.* at 475.

19

In 2013, the Supreme Court in *Standard Fire Insurance Co. v. Knowles* held that a stipulation by a named plaintiff in a putative class action, prior to certification of the class, that she and the class she seeks to represent will not seek damages that exceed $5,000,000, does not prevent removal of the case under CAFA. 133 S. Ct. at 1348–1350. In *Knowles*, the Supreme Court reversed the lower court's conclusion that the proposed class representative's stipulation was binding on the class yet to be certified, thereby foreclosing federal jurisdiction under CAFA, *id.* at 1348, and held that the District Court "should have ignored that stipulation" and "do[ne] what [a judge] must do in cases without a stipulation and what the statute requires, namely 'aggregat[e]' the 'claims of the individual class members,'" *id.* at 1350.

To this extent, *Knowles* is consistent with our instructions in *Morgan* that "[t]he party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold;" and "[e]ven if a plaintiff states that her claims fall below the threshold, this Court must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not." *Morgan*, 471 F.3d at 474–75. What *Knowles* teaches on this point is that although a plaintiff may limit her monetary claims, any such limitation is not

20

1. The *McNutt*/*Samuel-Bassett* framework applies where a challenge to the amount in controversy had been raised in the pleadings or the notice of removal, but "no evidence or findings in the trial court addressed that issue." *Samuel-Bassett*, 357 F.3d at 397; *McNutt*, 298 U.S. at 179–80. We require "the party alleging jurisdiction [to] justify his allegations by a preponderance of the evidence." *McNutt*, 298 U.S. at 189.

2. The *Red Cab*/*Samuel-Bassett* framework applies where the jurisdictional facts are not contested

binding on the class as a whole prior to class-action certification and does not relieve the district court of its obligation to conduct its own analysis of the amount in controversy. 133 S. Ct. at 1349.

We are not presented with a CAFA removal subject to the *Morgan* test and therefore do not opine on the implications of *Knowles* for *Morgan*'s holding that "defendants bear the burden to prove to a legal certainty that the complaint exceeds the statutory amount in controversy requirement" where the amount in controversy is alleged to be below the $5,000,000 threshold. *Morgan*, 471 F.3d at 475. However, consistent with both *Knowles* and *Morgan*, we emphasize for the sake of clarity that our instruction that a "Court must look to see if the plaintiff's actual monetary damages in the aggregate exceed the threshold," *id.* at 474–75, remains important in the wake of *Knowles.*

21

and the amount in controversy is "determined in whole or in part" by applicable law. *Samuel-Bassett*, 357 F.3d at 397–98. Here we ask whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed. *Id.* at 398.

**B.**

CAFA jurisdiction is limited to cases where the proposed class has more than 100 members. 28 U.S.C. § 1332(d)(5)(B). The District Court applied the *Samuel-Bassett* preponderance of the evidence test to Travelers' CAFA numerosity allegations in its notice of removal. The District Court applied the wrong test because it improperly held that Judon "vigorously contest[ed]" all jurisdictional aspects of removal, when, in fact, Judon never claimed that the proposed class action involved less than 100 members.

Travelers relied on Judon's complaint in asserting that there were at least 200 members of the proposed class. Specifically, Judon alleged in paragraph 38 of her complaint: "It is believed, and therefore averred, that there are hundreds of members of the class where the defendant, Travelers, wrongfully and illegally denied payment of first party medical benefits." Judon's sole challenge to Travelers' assertion that there were at least 200 putative class members was that Travelers supplied "no basis for this [number] other than the allegation in the complaint." Judon reasoned that "[s]ince Defendant

22

has exclusive possession of the information necessary to determine the number of class members, Defendant's omission of any proof on this speaks volumes." There are two noteworthy aspects of Judon's challenge: (1) Judon did not disavow her earlier allegation that there were "hundreds of members;"[9] and (2) Judon did not amend her complaint to allege fewer class members.[10]

Because Judon explicitly asserted in her complaint that there are "hundreds of members," Travelers was entitled to rely on this fact as an admission in favor of jurisdiction. *Parilla*, 368 F.3d at 275 (addressing facts in a complaint that were judicial admissions); *see also Glick*

---

[9] At oral argument, counsel for Judon contended that the term "hundreds" could be read to mean less than 200. By way of example, counsel argued that "hundreds" could indicate 150 because it is "1.5 hundreds." We do not recognize any semantic (or mathematic) principle that would justify fractionalizing the term "hundreds" and decline the invitation to read the word "hundreds" such that we may arrive at a number less than 100.

[10] Were Judon to amend her complaint, her earlier statements would no longer be judicial admissions *per se*, but could have evidentiary weight. *See W. Run Student Hous. Assocs., LLC*, 712 F.3d at 171. Even further, a subsequent amendment alone would not necessarily divest the district court of jurisdiction. *See Red Cab*, 303 U.S. at 285; *supra* note 4.

23

*v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) (explaining judicial admissions are also binding in a case on appeal). And in alleging the number 200 in its notice of removal, Travelers simply relied on the smallest number of potential class members consistent with Judon's allegations. A plaintiff is the master of her own complaint, *Morgan*, 471 F.3d at 474, and here Judon pleaded information supporting the numerosity jurisdictional requirement.

Judon's supposed challenge obscured the question of whether there was a dispute of fact by improperly asserting that Travelers bore the burden of proof as to numerosity. But Judon's motion to remand did not even put Travelers' CAFA numerosity allegation (which was really Judon's own allegation) in dispute. In *Frederico*, we reasoned that because the defendant's "argument for jurisdiction [was] based on allegations made initially by [the plaintiff] herself," and was not challenged by the plaintiff, "*Red Cab*'s legal certainty test [applied] to the facts alleged by [the plaintiff] in her complaint and incorporated by [the defendant] into its Notice of Removal." 507 F.3d at 198. In this case, our decision in *Frederico* guides us to apply the legal certainty test as to the number of putative class members at issue. *Id.* at 195.

Accordingly, the District Court erred in failing to place the burden on Judon to prove to a legal certainty that there could not be 200 class members. *See id.* at

24

195. As Judon did not even dispute the "at least 200 members" representation, much less attempt to put forth any evidence to the contrary, the District Court should have found the numerosity requirement satisfied.

## C.

CAFA mandates that the "claims of the individual class members shall be aggregated" in order to determine if the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2), (d)(6). The District Court reasoned that Judon also "vigorously contested" this jurisdictional element and placed the burden on Travelers to establish the amount-in-controversy requirement by a preponderance of the evidence. Because Travelers' notice of removal and accompanying memorandum are based on an inconclusive assumption that Judon challenged in her motion to remand, the District Court properly applied the preponderance of the evidence standard.

As a starting point, Judon did put the amount-in-controversy requirement in dispute. Judon's complaint was indeterminate regarding the amount in controversy. The individual damages claimed by Judon amounted to $2,636.40. The proposed class included individuals entitled to "first party medical expense benefits [and that] were not made available in an amount up to $25,000.00 but only in an amount up to $5,000.00." The complaint

did not explicitly allege the total class damages, or the damages suffered by individual class members. Thus, Judon's allegations "[threw] no light upon [the] subject" of the total amount in controversy. *See McNutt*, 298 U.S. at 181.

Travelers erroneously contends that the jurisdictional amount is not in dispute because its statement of the amount in controversy in its notice of removal is based on facts pled by Judon in the class-action complaint. In so arguing, Travelers stretches the phrase "up to $25,000" to mean that each putative class member has a claim for $20,000 ($25,000 minus the $5,000 policy limit). In her motion to remand, Judon contended that Travelers provided "no information about the actual stated limits of the policies covering the class members, which could be more than $5,000, nor any information about the actual claims of the class members, which may or may not reach the statutory limit of $25,000." For example, Judon highlighted that her damages were "only $2636 as of the date of filing." Judon's motion to remand effectively put at issue and challenged Travelers' assumption regarding putative class members' individual damages.

Because a "challenge to the amount in controversy [was] raised" in Judon's motion to remand, but "no evidence or findings in the trial court addressed" this issue, we require Travelers, as "the party alleging jurisdiction," to justify its "allegations by a

26

preponderance of the evidence." *See Samuel-Bassett*, 357 F.3d at 397; *McNutt*, 298 U.S. at 179–80.[11] Although Travelers could properly rely on an estimate of 200 class members, this fact alone cannot support Travelers' calculation of the amount in controversy. The multiplicand missing from this equation is some realistic estimate of the amount of damages per class member. *See id.* at 403. An estimate of the amount recoverable should be "objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Id.* This estimate should also not be based on the "low end of an open-ended claim," but rather on a "reasonable reading of the value of the rights being litigated." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (quoting *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) (internal quotation marks omitted)).

Travelers' estimate of the putative class members' compensatory damages relies on Travelers' *maximum exposure* per plaintiff in the amount of $20,000. Judon argues that a putative class member's claim could be much smaller—in fact, Judon's individual claim against

---

[11] Judon did not explicitly limit the amount in controversy to less than $5,000,000, making the framework set out under *Morgan* inapplicable. *Frederico*, 507 F.3d at 196–97.

Travelers is only $2,636.40. In a class action, the class representative's claim(s) must be typical of the claims of the class. Pa. R. Civ. P. 1702(3) (Pennsylvania class action typicality requirement); Fed. R. Civ. P. 23(a)(3) (federal class action typicality requirement). It is, therefore, not unreasonable to assume that Judon, as the proposed class representative, has damages that are typical of the class. *See Frederico*, 507 F.3d at 197 (accepting the defendant's contentions in its notice of removal that the plaintiff's damages reflected the "average actual damages of each member of the putative class"). Even if we were to assume that Judon's individual compensatory damages are on the low-end as compared to other putative class members, we are left with no evidence of what a reasonable claim against Travelers might be.

Rather than present evidence or rely on an admitted fact from Judon's complaint, Travelers admits that it is drawing *inferences* from the limited papers the parties have submitted. In its brief and at oral argument, Travelers attempted to bolster its assumption regarding damages by providing another calculation that would be sufficient to satisfy the amount-in-controversy requirement. Rather than assume maximum recovery of $20,000 per class member (as it did in the notice of removal and subsequent briefing), Travelers argued that even if each class member recovered "as little as $8,500 (roughly 42% of the potential maximum)," CAFA's

28

jurisdictional threshold would be met. Travelers did not provide a principled reason to choose $8,500 as the appropriate delta for damages, as opposed to $2636.40 or even $20,000. The only explanation for Travelers' two proposed damages calculations that we can divine is that both $8,500 and $20,000 satisfy the requisite amount-in-controversy requirement.

Yet an assumption must be grounded on some reasonable inference that can be drawn from fact. Travelers chose—wishfully—the amount of $20,000 per putative class member, providing the putative class with total compensatory damages of $4,000,000 (200 class members multiplied by $20,000) combined with punitive and treble damages. These assumptions plainly make reaching the $5,000,000 threshold much easier. Missing from Travelers' conjecture is any "proof to a reasonable probability" evidencing the damages suffered by individual class members. *See Frederico*, 507 F.3d at 195 n.6.

As a result, Travelers' conjecture is nothing more than an optimistic estimate of its potential liability—at least for jurisdictional purposes.[12] By way of example, in

---

[12] Judon also challenged Travelers' ability to establish the amount in controversy based on Judon's request for punitive and treble damages. Travelers' motion to dismiss Judon's claim for punitive damages did not render consideration of punitive damages irrelevant to the

29

*Frederico*, we relied on the named plaintiff's actual injuries as the "average actual damages of each member of the putative class" to determine whether the CAFA amount-in-controversy requirement was satisfied. 507 F.3d at 198–99. Here, Judon's individual damages undermine a blind reliance on Travelers' maximum risk

amount-in-controversy calculation. *See Red Cab*, 303 U.S. at 289. Accordingly, punitive damages, when available under applicable law, may be considered by a court in assessing federal jurisdiction. *See Frederico*, 507 F.3d at 199. Travelers must "prove what possible exposure exist[s] with respect to punitive damages [in order] to satisfy any portion of the $5 million amount in controversy requirement." *Morgan*, 471 F.3d at 475. Travelers argues that "once treble and/or punitive damages alleged by Judon are considered, it is evident that CAFA's amount in controversy is satisfied." Specifically, Travelers relies on a "3:1 punitive-to compensatory damages ratio," (citing *Luellen v. Luellen*, No. 12:12-cv-496, 2013 WL 1182958, at *3 (W.D. Pa. Mar. 21, 2013)), and a statement that punitive damages can satisfy the amount-in-controversy requirement under the legal certainty test, (citing *Graham Co. v. Griffing*, No. 08-1394, 2009 WL 1407779, at *3 (E.D. Pa. May 19, 2009)), to support its jurisdictional arguments. To calculate either treble or punitive damages, we must have a reasonable estimate of compensatory damages. Such evidence is decidedly lacking.

30

of damages under Pennsylvania law. Accordingly, there are insufficient facts to establish by a preponderance of the evidence that the District Court had jurisdiction over the case.

## D.

Although Travelers was loath to concede at oral argument the legal arguments we now reject, we are left with the question of whether to remand to the District Court for it to determine if jurisdictional discovery should be permitted. Travelers contends that before filing its notice of removal, it searched for relevant jurisdictional facts but was apparently unable to complete its inquiry in time to include such facts in its notice of removal. Once in federal court, however, Travelers abandoned its alleged previous attempt to put forth any actual facts. Instead, Travelers relied solely on the proposition that the legal certainty test should apply to all jurisdictional questions in this case.

Yet in a CAFA removal action there is generally greater flexibility afforded to a party seeking removal. Specifically, 28 U.S.C. § 1453 provides that the 1-year limitation for removal under § 1446(c)(1) does not apply to removal under CAFA. In a situation where the "case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant" of an "amended pleading, motion, or order or other paper from which it may be first ascertained that

31

the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  Thus, a defendant may be able to remove an action under CAFA well into the course of the litigation once facts are discovered supporting removal. *See* Georgene M. Vairo, *Moore's Federal Practice: The Complete CAFA: Analysis and Developments Under the Class Action Fairness Act of 2005*, p. 167 (Matthew Bender 2011); *see also Farina v. Nokia Inc.*, 625 F.3d 97, 101, 113 n.17 (3d Cir. 2010) (explaining that "CAFA operates as an expansion of diversity jurisdiction"  and that although an action may not be initially removable, it is removable upon receipt of appropriate facts pursuant to 28 U.S.C. § 1446(c) (citation omitted)).

Travelers concedes it has not completed a thorough review of evidence or requested jurisdictional discovery from the District Court.  Because of this, we will affirm in part, vacate in part, and remand to the District Court.  We will also direct the District Court to remand the case to state court unless it determines that further jurisdictional proceedings are necessary, or concludes that Travelers has established jurisdiction under CAFA.  We note that the District Court "has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 756 (3d Cir. 1995) (quoting *Prakash v. American Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984)).  In the event Travelers is unsuccessful in establishing CAFA

32

jurisdiction during the early stages of this action, Travelers may still re-remove the case to federal court if new facts are discovered that establish jurisdiction. *See* 28 U.S.C. § 1446(b)(3); *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 210–11 (3d Cir. 2014).[13]

---

[13] Because *A.S. ex rel. Miller v. SmithKline Beecham Corp.* involved an action commenced in 2011, the case does not address the current text of 28 U.S.C. § 1446(b) that applies to cases commenced after January 6, 2012. 769 F.3d at 208 n.3. The current text of § 1446(b)(3), outlined above, applies to this case. This Court has yet to analyze, particularly in the context of an action brought under CAFA, whether a defendant has an independent duty to discover evidence that would establish removal jurisdiction that is not apparent from the face of a plaintiff's complaint. We are not squarely presented with this question. The majority of our sister circuits have concluded that the "30-day removal clock does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present." *Walker v. Trailer Transit, Inc.,* 727 F.3d 819, 824 (7th Cir. 2013) (collecting cases); *see also Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 78 (1st Cir. 2014) (holding that an email correspondence from a plaintiff to a defendant, based on discovery produced by a defendant, was an "other paper" that provided the basis for removal under

## IV.

The District Court erred in concluding that the CAFA numerosity requirement was not satisfied, but correctly concluded that Travelers did not establish the CAFA amount-in-controversy requirement. Accordingly, we will affirm in part, vacate in part, and remand to the District Court. The District Court is to remand this case to state court unless the District Court, through further proceedings, determines that Travelers has established jurisdiction under CAFA.

---

CAFA). Resolution of this question must await an appropriate case.