**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3090
_____

SAMANTHA DERVITZ,
on behalf of herself and those similarly situated,
Appellant

v.

ARS NATIONAL SERVICES INC;
JOHN DOES 1 TO 10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-22-cv-00179)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 16, 2023
_____

Before:  CHAGARES, *Chief Judge*, MATEY and FUENTES, *Circuit Judges*


(Filed: March 19, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**FUENTES**, *Circuit Judge*.

ARS National Services, Inc. ("ARS") sent Samantha Dervitz a debt collection letter using a third-party mailing vendor. In doing so, ARS disclosed to the vendor certain information about Dervitz and her debt. Dervitz never consented to the disclosure of that information to third parties, so she brought this putative class action lawsuit in New Jersey state court, asserting a violation of the federal Fair Debt Collection Practices Act[1] ("FDCPA") and several state-law claims.

After ARS removed the case to federal court, the District Court dismissed Dervitz's claims under the doctrine of judicial estoppel. During the pendency of this appeal, our Court published a precedential opinion in *Barclift v. Keystone Credit Services, LLC*,[2] which addresses a factually similar FDCPA case and holds that the plaintiff failed to allege a concrete injury sufficient to confer standing under Article III of the U.S. Constitution. Bound by *Barclift*, we now hold that Dervitz likewise lacks standing to maintain her FDCPA claim in federal court and, as a result, that we and the District Court lack supplemental jurisdiction over her pendent state-law claims. Accordingly, we will vacate the District Court's order of dismissal and remand to the District Court with instructions to remand the case to the state court from which it was originally removed.

I.

We write for the parties and thus recite only the facts pertinent to our decision. ARS is a debt collection agency that uses mail, telephone, the internet, and other means of

---

[1] 15 U.S.C. § 1692 *et seq.*
[2] No. 22-1925, --- F.4th ---, 2024 WL 655479 (3d Cir. Feb. 16, 2024).

communication to collect debts. In December 2020, Dervitz received a collection letter in the mail from ARS regarding an alleged past-due personal debt. Dervitz alleged, upon information and belief, that ARS mailed that letter using a third-party mailing vendor and, in doing so, disclosed information to the vendor about Dervitz's debt—including the account number associated with the debt and the balance due. Dervitz never authorized ARS to share that information.

In December 2021, Dervitz filed a putative class action complaint in the Superior Court of New Jersey on behalf of herself and other New Jersey consumers who had received similar collection notices from ARS through third-party mailing vendors dating back to December 2015. Dervitz asserted violations of the FDCPA and New Jersey's Consumer Fraud Act[3] as well as claims for negligence and invasion of privacy, maintaining that the putative class members suffered an "ascertainable" and "compensable loss" due to the disclosure of their financial information.[4]

ARS timely removed the case to the District of New Jersey, citing federal-question jurisdiction as to Dervitz's FDCPA claim and supplemental jurisdiction as to her state-law claims. Then, ARS moved to dismiss the complaint under the doctrine of judicial estoppel.[5] In relevant part, ARS argued that Dervitz failed to fully disclose her claims against ARS as assets of her estate in a voluntary Chapter 7 bankruptcy petition she filed in March 2021

---

[3] N.J. Stat. Ann. § 56:8-2.

[4] App. 15–17.

[5] The doctrine of judicial estoppel "bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001).

and should not be allowed to benefit from that misrepresentation by maintaining this suit. The District Court agreed and dismissed Dervitz's complaint with prejudice. This appeal followed.

## II.

The District Court had putative jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). We have jurisdiction over the District Court's order of dismissal under 28 U.S.C. § 1291, which includes our "jurisdiction to determine our own jurisdiction."[6]

## III.

## A.

As "courts of limited jurisdiction," federal courts "possess only that power authorized by Constitution and statute."[7] "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction" (here, ARS).[8]

In its Notice of Removal, ARS set forth the statutory bases for the District Court's subject matter jurisdiction—specifically, federal-question jurisdiction as to Dervitz's FDCPA claim and supplemental jurisdiction as to her state-law claims. But ARS did not address whether there was any constitutional basis for the District Court's exercise of

---

[6] *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 144 (3d Cir. 2023) (quoting *United States v. Kwasnik*, 55 F.4th 212, 215 (3d Cir. 2022)).

[7] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[8] *Id.* (internal citations omitted); *see Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) ("A party asserting federal jurisdiction in a removal case bears the burden of showing 'that the case is properly before the federal court.'") (quoting *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007)).

jurisdiction over Dervitz's claims as a matter of Article III standing—that is, whether Dervitz "ha[d] 'alleged such a personal stake in the outcome of the controversy' as to warrant [the] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf."[9] The District Court likewise did not address standing before dismissing the entire case with prejudice. However, "[a]bsent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims."[10] So we will now resolve that issue "in the first instance on appeal, as we have an obligation to assure ourselves that jurisdiction exists."[11]

B.

For Dervitz to have Article III standing, she must have suffered: "(1) an injury-in-fact; (2) that is fairly traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable judicial decision."[12] An injury-in-fact must be "concrete, particularized, and actual or imminent."[13] To determine whether a harm is concrete, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts."[14] In doing so, we should look for a "close historical or common-law analogue for [her]

---

[9] *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

[10] *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (citing *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)).

[11] *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021) (citations omitted).

[12] *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 356 (3d Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992)).

[13] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

[14] *Id.* at 424 (internal quotation marks and citation omitted).

asserted injury."[15]  The easiest Article III injuries to identify are "traditional tangible harms, such as physical harms and monetary harms."[16]  Harder to pin down, but equally concrete, are intangible harms, such as "reputational harms, disclosure of private information, and intrusion upon seclusion."[17]

Legislatures may elevate certain nontraditional harms to "legally cognizable injuries," but they "may not simply enact an injury into existence, using [their] lawmaking power to transform something that is not remotely harmful into something that is."[18]  In other words, even if Congress says certain conduct is unlawful through legislation (such as the FDCPA), we must still look for a harm traditionally recognized at common law to determine whether that conduct is also traditionally harmful for purposes of standing under Article III.

## C.

Our recent decision in *Barclift* applied these standing principles to another putative FDCPA class action with similar factual allegations.  Like Dervitz, the plaintiff in *Barclift* claimed that the defendant violated the FDCPA by disclosing information about her debt to a third-party mailing vendor without her prior consent.[19]  On appeal, we considered whether Barclift had alleged a concrete injury under Article III, given the Supreme Court's

---

[15] *Id.*
[16] *Id.* at 425.
[17] *Id.*
[18] *Id.* at 425–26 (quotations omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.").
[19] *Barclift*, --- F.4th ---, 2024 WL 655479, at *1.

recent guidance in *TransUnion LLC v. Ramirez*.[20] We first addressed the appropriate standard for determining whether a harm is concrete under Article III and held that, when assessing the concreteness of a plaintiff's intangible injury, we ask whether "the kind of harm at issue" is closely related to a traditionally recognized harm.[21]

Applying that standard to Barclift's allegations, we found that she lacked Article III standing for her FDCPA claim because she could not demonstrate that "the injury resulting from [the defendant]'s communication of her personal information to a third-party mailing vendor bears a close relationship to a harm traditionally recognized by American courts."[22] Barclift had analogized her injury, in relevant part, to "the public disclosure of private information."[23] The harm connected with that tort, we observed, is "the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny," which stems "from both the offensive character of the information *and its disclosure to the public*."[24] But according to Barclift's complaint, nobody other than the defendant debt collector and the mailing vendor accessed her personal information. As other courts have recognized, "[t]hat is not the same kind of harm as *public* disclosure of private facts, which is concerned with highly offensive information being widely known."[25] We thus reasoned that "[w]hen the communication of personal information only occurs between a debt collector and an intermediary tasked with contacting the consumer, the

---

[20] *Id.* at *3–5.

[21] *Id.* at *5.

[22] *Id.* (citing *TransUnion*, 594 U.S. at 417).

[23] *Id.*

[24] *Id.* (emphasis added) (citation omitted).

[25] *Shields v. Prof'l Bureau of Collections of Md., Inc.*, 55 F.4th 823, 829 (10th Cir. 2022).

consumer has not suffered the kind of privacy harm traditionally associated with public disclosure."[26] Finding no Article III standing, we affirmed the dismissal of Barclift's complaint.

Dervitz's FDCPA claim is deficient for substantially the same reasons. All she alleges in her complaint is that ARS communicated personal information about her debt to an intermediary tasked with contacting her about that debt. But as we explained in *Barclift*, harms stemming from such "functionally internal" disclosures "are not closely related to those stemming from public ones."[27] And none of the complaint's allegations indicate any likelihood that the unnamed mailing vendor would intentionally or accidentally release her information to third parties in the future. Because Dervitz cannot point to any closely related and traditionally recognized common-law analogue for her alleged harm, she lacks a concrete injury and cannot establish Article III standing.

The parties' other arguments as to standing are without merit. For one, Dervitz insists that we are not required to consider whether her harm has a closely related common-law analogue "because [*TransUnion*] expressly stated that the 'disclosure of private information' is among a few intangible harms which are always concrete."[28] That would be true if Dervitz had indeed alleged that harm, but she has not. Moreover, ARS argues that Article III standing exists because, when determining the sufficiency of the complaint, Dervitz's allegations that she suffered "ascertainable" and "compensable loss" are

---

[26] *Barclift*, --- F.4th ---, 2024 WL 655479, at *6.
[27] *Id.* (citing *Shields*, 55 F.4th at 829).
[28] Appellant's Reply Br. at 14 (quoting *TransUnion*, 594 U.S. at 425).

"presumed to be true."[29]  But because those declarations "are no more than conclusions," they "are not entitled to the assumption of truth."[30]  Even if they were, we found no Article III standing in *Barclift* despite the plaintiff's sweeping allegation that the mailing-vendor disclosures "had caused her embarrassment and stress, invaded her privacy, and inflicted reputational harm."[31]  In comparison, Dervitz's complaint does not allege even an "identifiable trifle" of injury.[32]

In sum, we hold that Dervitz lacks standing to maintain her FDCPA claim in federal court.  As a result, we lack jurisdiction over that claim, as well as her state statutory and common-law claims.[33]  So we will vacate the District Court's order dismissing those claims with prejudice.

D.

Our final task is to determine where this case goes from here.  28 U.S.C. § 1447(c) expressly provides that, in any case removed from a state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court.  The statute requires district courts to remand

---

[29] Appellee's Br. at 3–4 (quoting Appx. 15, 17).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[31] *Barclift*, --- F.4th ---, 2024 WL 655479, at *1.

[32] *See Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005) (citing *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)).

[33] Just as Article III standing is required to vest a federal court with original jurisdiction, original jurisdiction is a prerequisite for a court to exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.  Because Dervitz lacks standing as to her federal claim, the District Court lacked original jurisdiction over that claim and therefore could not exercise supplemental jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) ("The federal claim must have substance sufficient to confer subject matter jurisdiction on the court" in order for the court to exercise supplemental jurisdiction).

such cases, even if remand would be futile.[34]  Accordingly, having concluded that we lack jurisdiction over all of Dervitz's claims, on remand we will instruct the District Court to remand the case to New Jersey state court.

## IV.

For the foregoing reasons, we will vacate the District Court's order dismissing Dervitz's complaint with prejudice under the doctrine of judicial estoppel, and we will remand to the District Court with instructions to remand this case to the Superior Court of New Jersey, Law Division, Special Civil Part, Essex County.

---

[34] *See Bromwell v. Mich. Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("[W]hen a federal court has no jurisdiction of a case removed from a state court, it must remand and not dismiss on the ground of futility.").