**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1540
_____

JOANNE NEALE, Individually and on behalf of all
others similarly situated;
KERI HAY, Individually and on behalf of all others
similarly situated; DAVID TAFT; JEFFREY KRUGER;
KAREN COLLOPY; KELLY MCGARY;
SVEIN A. BERG; GREGORY P. BURNS

v.

VOLVO CARS OF NORTH AMERICA, LLC;
VOLVO CAR CORPORATION,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 2-10-cv-04407
District Judge: The Honorable Dennis M. Cavanaugh

Argued: June 2, 2015

Before: SMITH, CHAGARES, and HARDIMAN,
*Circuit Judges*

(Filed: July 22, 2015)


Paul Daly, Esq.
Hardin, Kundla, McKeon & Poletto
673 Morris Avenue
P.O. Box 730
Springfield, NJ  07081

Peter W. Herzog, III, Esq.　　　**ARGUED**
Wheeler Trigg O'Donnell
211 North Broadway
Suite 1200
St. Louis, MO  63102
　　*Counsel for Appellants*


David M. Freeman, Esq.
Eric D. Katz , Esq.　　　**ARGUED**
David A. Mazie, Esq.
Matthew R. Mendelsohn
Mazie Slater, Katz & Freeman
103 Eisenhower Parkway
Suite 207
Roseland, NJ  07068

Benjamin F. Johns, Esq.
Joseph G. Sauder, Esq.
Matthew D. Schelkopf, Esq.
Chimicles & Tikellis
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA  19041
        *Counsel for Appellees*


Daniel I. Rubin, Esq.
Andrew R. Wolf, Esq.
Henry P. Wolf, Esq.
The Wolf Law Firm
1520 U.S. Highway 130
Suite 101
North Brunswick, NJ  08902
        *Counsel for Amicus Appellee*

_____


OPINION
_____


SMITH, *Circuit Judge.*

This appeal involves a putative class action brought by consumers from six states alleging that Appellants-Defendants Volvo Cars of North America, LLC and Volvo

Car Corporation (collectively "Volvo") sold certain vehicles with defective sunroof drainage systems. Volvo challenges the grant of class certification by the U.S. District Court for the District of New Jersey. For the reasons that follow, we will vacate the District Court's order and remand for further proceedings.

## I.

Plaintiffs-Appellees Joanne Neale, Keri Hay, Kelly McGary, Svein Berg, Gregory Burns, David Taft, Jeffrey Kruger, and Karen Collopy (collectively "Plaintiffs") filed suit on behalf of themselves and a nationwide class of current and former Volvo vehicle owners and lessees. Plaintiffs allege that a uniform design defect exists in the sunroof drainage systems in the following vehicles sold and leased to consumers by Volvo: S40, S60, S80, and V70 (model years 2004 to present); XC90 (model years 2003 to present); and V50 (model years 2005 to present) (the "Class Vehicles").

On August 7, 2012, Plaintiffs proposed a nationwide class consisting of "[a]ll persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle (the 'Nationwide Class')." Supplemental Appendix ("SA") 19; Joint Appendix ("JA") 140. In the alternative, Plaintiffs also proposed the following statewide classes:

> All persons or entities in Massachusetts who are current or former owners and/or lessees of a Class Vehicle (the "Massachusetts Class").

4

> All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle (the "Florida Class").
>
> All persons or entities in Hawaii who are current or former owners and/or lessees of a Class Vehicle (the "Hawaii Class").
>
> All persons or entities in New Jersey who are current or former owners and/or lessees of a Class Vehicle (the "New Jersey Class").
>
> All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "California Class").
>
> All persons or entities in Maryland who are current or former owners and/or lessees of a Class Vehicle (the "Maryland Class").

SA 20; *see also* JA 140–41 (Pls.' Second Am. Compl. listing all classes except for the Maryland Class). Volvo filed a brief in opposition to the proposed classes and separate motions for summary judgment against the individual class representatives.

On March 26, 2013, the District Court denied Plaintiffs' motion to certify a nationwide class, granted Plaintiffs' motion to certify six statewide classes, and denied Volvo's motions for summary judgment. After the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), Volvo moved for reconsideration of the District

Court's order granting class certification, which the District Court also denied.  Volvo filed this timely appeal.

## II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1332(d)(2) and (d)(6) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.[1]  We have jurisdiction pursuant to 28

[1] Plaintiffs asserted federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").  Pub. L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). CAFA confers on district courts original jurisdiction where: (1) the amount in controversy exceeds $5,000,000, as aggregated across all individual claims; (2) there are minimally diverse parties; and (3) the class consists of at least 100 or more members.  28 U.S.C. § 1332(d)(2), (5)(B), (6); *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013).

Although the parties do not dispute CAFA jurisdiction, "[w]e must nevertheless satisfy ourselves that federal subject matter jurisdiction exists in the first instance." *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009).  "In order to determine whether the CAFA jurisdictional requirements are satisfied, a court evaluates allegations in the complaint." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014).  Plaintiffs contend that there were over 100 class members because there were "tens of thousands" of Class Vehicles sold in the United States.  JA

107, 141–42, Second Am. Compl. ¶¶ 5, 127. As to the amount in controversy, Plaintiffs allege that class members "suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damages," JA 148, ¶ 148, that they are seeking punitive damages and attorney's fees and costs, and that this exceeds $5,000,000. Finally, because one plaintiff and one defendant are citizens of different states, Plaintiffs contend that there is minimal diversity. Volvo answered that the jurisdictional allegations stated "a legal conclusion to which no response [was] necessary," but to the extent "a response is deemed required, Volvo admits the allegations in this paragraph." JA 170, Am. Answer ¶ 5.

Because Volvo did not contest these jurisdictional facts, we ask "whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed." *Judon*, 773 F.3d at 505. As in *Frederico v. Home Depot*, we have an idea of each class representative's damages but not the total number of class members. 507 F.3d 188, 199 (3d Cir. 2007). Using class representative Gregory Burns as an example, he was charged $252.82 to repair his damaged vehicle. As a citizen of New Jersey, he can seek punitive damages of up to five times the compensatory damages, N.J. Stat. Ann. § 2A:15-5.14(b). Thus, an estimate of his total damages amounts to $1,516.92. A median recovery range for attorney's fees is approximately 30 percent, which would be $455.08 for Burns' claim. Burns' damages plus attorney's fees would equal $1,972. The $5,000,000 CAFA amount-in-controversy requirement divided by $1,972 equals

U.S.C. § 1292(e) and Rule 23(f) of the Federal Rules of Civil Procedure.

"We review a class certification order for abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 179 (3d Cir. 2014) (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013)) (internal quotation marks omitted). We review de novo a legal standard applied by a district court. *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013).

## III.

Volvo argues on appeal that: (1) putative members of the class have not suffered an injury and therefore lack Article III standing; (2) the District Court failed to identify the class claims and defenses in its certification order; (3) the District Court erred in its analysis of the Rule 23(b)(3) predominance requirement; and (4) the Supreme Court's decision in *Comcast Corp. v. Behrend* means that Plaintiffs

---

approximately 2,536 class members. Because 2,536 is well under the number of Class Vehicles identified in the Second Amended Complaint ("tens of thousands"), we are satisfied that the "legal certainty test is met: as it does not appear to a *legal certainty* that [Plaintiffs] cannot recover the jurisdictional amount, the case need not be remanded and we may proceed to the substantive merits of this appeal." *See Frederico*, 507 F.3d at 199.

must have class-wide proof of damages in order for the class to be certified.  We address each issue in turn.

## A.

Volvo argues that all putative class members must have Article III standing.  We begin with this argument because "[w]e have 'an obligation to assure ourselves' of litigants' standing under Article III." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)); *see also In re Deepwater Horizon*, 739 F.3d 790, 798 (5th Cir. 2014).  We exercise plenary review over a threshold question of law, such as that presented by an Article III standing challenge.  *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 222 n.9 (3d Cir. 2012).

## 1.

Article III governs constitutional standing and limits our jurisdiction to actual "cases or controversies."  U.S. Const. art. III, § 2.  Article III requires a plaintiff to demonstrate "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1991)).  Constitutional standing ensures that litigants are truly adverse to one another and are not merely "suitors in the courts of the United States." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 476

(1982); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013); *see also* William A. Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 222 (1988) (explaining that a concrete dispute "informs the court of the consequences of its decisions" and prevents "the anti-majoritarian federal judiciary from usurping the policy-making functions of the popularly elected branches").

The case before us concerns the injury-in-fact requirement. The requisite injury-in-fact is an "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. That injury must be "particularized," *id.*, and "concrete in both a qualitative and temporal sense," *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). That injury must also be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quoting *Whitmore*, 495 U.S. at 155) (internal quotation marks omitted). A risk of future injury may support standing if the threatened harm is "certainly impending," or there is a "'substantial risk'" that the harm will occur. *Clapper*, 133 S. Ct. at 1148, 1150 n.5 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153 (2010)).

Standing requires that the party seeking to invoke federal jurisdiction "demonstrate standing for each claim he seeks to press." *DaimlerChrysler*, 547 U.S. at 352. Thus, we do not exercise jurisdiction over one claim simply because it

10

arose "from the same 'nucleus of operative fact'" as another claim. *Id.* Accordingly,

> [S]tanding is not a "mere pleading requiremen[t] but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."

*Ala. Legis. Black Caucus v. Alabama*, 135 S. Ct. 1257, 1276 (2015) (alteration in original) (quoting *Lujan*, 504 U.S. at 561).

In the context of a class action, Article III must be satisfied "by at least one named plaintiff." *McNair*, 672 F.3d at 223; *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). The Supreme Court has yet to comment on what Article III requires of putative, unnamed class members during a Rule 23 motion for class certification.[2]

---

[2] The Supreme Court granted the petition for certiorari in *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146, 2015 WL 1278593, at *1 (U.S. June 8, 2015). The second question presented is: "Whether a class action may be certified or

11

In *Amchem Products, Inc. v. Windsor*, the Supreme Court declined to address the argument that asbestos exposure-only class members had no standing to pursue their class claims and instead began its analysis with Rule 23. 521 U.S. 591, 612–13 (1997). The Supreme Court agreed with our analysis that the settlement class's standing issues "'would not exist but for the [class-action] certification'" and that those issues were dispositive "because their resolution [was] logically antecedent to the existence of any Article III issues." *Id.* at 612 (first alteration in original) (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 623 (3d Cir. 1996)); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (reasoning that the question of whether certification of a settlement class under Rule 23(b)(1)(B) on a limited fund rationale presented, as in *Amchem*, an issue of "statutory standing" that "should be treated first").

Yet considerations under Rule 23 are themselves procedural rules, and thus rarely can be antecedent to the question of whether a federal court has jurisdiction to hear a claim at all. *See* 28 U.S.C. § 2072(a), (b) (authorizing the Supreme Court to prescribe "general rules of practice and procedure," but providing that those rules "shall not abridge,

---

maintained under Rule 23(b)(3), or a collective action certified or maintained under the Fair Labor Standards Act, when the class contains hundreds of members who were not injured and have no legal right to any damages." Pet. for Writ of Cert, *Tyson Foods, Inc. v. Bouaphakeo*, 2015 WL 1285369, at *i (Mar. 19, 2015). The Supreme Court may, therefore, answer this question during its October 2015 term.

12

enlarge or modify any substantive right"); Fed. R. Civ. P. 82 (stating that the Federal Rules of Civil Procedure "do not extend or limit the jurisdiction of the district courts"); 1 William B. Rubenstein, *Newberg on Class Actions* § 1:1 (5th ed. 2012) ("Rule 23 is, therefore, fundamentally a *procedural* device: it cannot ordinarily be construed to extend or limit the jurisdiction and venue of federal courts."). What is more, the Supreme Court has recently explained that "statutory standing" is "misleading, since 'the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 (2002)). Because a federal court has a "bedrock obligation to examine both [its] own subject matter jurisdiction and that of the district courts," *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 & n.5 (3d Cir. 1997), it is improper to "resolve contested questions of law when its jurisdiction is in doubt." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

The Supreme Court has candidly recognized the tension in its standing precedent: "We need not mince words when we say that the concept of 'Art. III standing' has not been defined with complete consistency in all of the various cases decided by this Court." *Valley Forge Christian Coll.*, 454 U.S. at 475. One could say that *Amchem* stands for the proposition that when a federal court would deny a class certification motion, that court need not reach the question of jurisdiction. *See* 521 U.S. at 612–13. Yet that logic could

result in a federal court, in many cases, reaching Rule 23 questions before assuring itself of jurisdiction. Even more problematic for this application of *Amchem* is the extensive discussion in *Steel Co. v. Citizens for a Better Environment* that read cases that "ha[d] diluted the absolute purity of the rule that Article III jurisdiction is always an antecedent question" in a very limited manner. 523 U.S. at 101. The Supreme Court reasoned that "[f]or a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Id.* at 101–02. And because determining the answer to a Rule 23 certification motion involves "rigorous analysis" that may overlap with merits-based questions, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–52 (2011), a federal court's analysis will rarely be an obvious, foregone conclusion. Indeed, *Amchem* cautioned that "[i]f certification issues were genuinely in doubt . . . the jurisdictional issues would loom larger." 521 U.S. at 613 n.15.

In this case, certification issues are genuinely in doubt. And because we will remand this matter to the District Court as described herein, that court may well be presented with the very same arguments regarding standing. For these reasons, we address Volvo's standing argument.

**2.**

In *In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions*, we addressed the applicability of Article III to a putative class. The case involved a settlement class alleging improper sales and

14

marketing practices by the life insurer Prudential. 148 F.3d 283, 290–92 (3d Cir. 1998). We held that once Article III standing "is determined vis-a-vis the named parties . . . there remains no further separate class standing requirement in the constitutional sense." *Id.* at 306–07 (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 2.05 (3d ed. 1992)) (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 505–06 (D.N.J. 1997) and *Allee v. Medrano*, 416 U.S. 802, 828 (1974)).[3] We further explained that "absentee class members are not required to make a

---

[3] The latest version of *Newberg on Class Actions* provides that "[a] class action can be maintained by one class representative with proper standing," and cites to Rule 23(a) as authority. 2 William B. Rubenstein, *Newberg on Class Actions* § 2:8 (5th ed. 2012); *id.* § 2:1 ("Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court; there is no further, separate 'class action standing' requirement."); *see also* 5 Jerold S. Solovy et al., *Moore's Federal Practice - Civil* § 23.63 (3d ed. 1997) ("The named plaintiff in a class action must meet all the jurisdictional requirements to bring an individual suit asserting the same claims, including standing."); 1 *McLaughlin on Class Actions* § 4:28 (11th ed. 2014) ("In the class action context, including cases seeking prospective injunctive relief, as an Article III justiciability matter only the named plaintiff must demonstrate standing to assert the claims (including injury in fact), not the absent class members. Individual class members do not need to submit evidence of personal standing." (footnotes omitted)).

15

similar showing, because once the named parties have demonstrated they are properly before the court, 'the issue [becomes] one of compliance with the provisions of Rule 23, not one of Article III standing.'" *Id.* at 307 (alteration in original) (quoting *Goodman v. Lukens Steel Co.,* 777 F.2d 113, 122 (3d Cir. 1985), *aff'd*, 482 U.S. 656 (1987)); *see also Hayes*, 725 F.3d at 361 & n.11–12 (explaining that at the class certification stage when a named plaintiff's Article III standing is in question, a district court must determine whether that named plaintiff "falls within the amended class definition and sustained an injury"). Because *In re Prudential* involved a settlement class, we did not have occasion expressly to address whether unnamed class members in a litigation class must have Article III standing.[4]

---

[4] Volvo also asks us to treat the certification of a settlement class in *In re Prudential* as distinguishable from that of a litigation class. Nothing in *In re Prudential*, however, limited its reach to that of absent *settlement* class members. *See* 148 F.3d at 306–07. Nor has our application of *In re Prudential* been limited solely to settlement classes. *See McCray v. Fidelity Nat'l Title Ins. Co.*, 682 F.3d 229, 243 & n.13 (3d Cir. 2012) ("In the context of class actions, Article III standing 'is determined vis-a-vis the named parties.'" (quoting *In re Prudential*, 148 F.3d at 306)). Indeed, Rule 23's rigors are not relaxed as to a settlement class; we simply do not weigh issues of trial management as they are irrelevant in such a situation. *Sullivan v. DB Investments, Inc.* (*Sullivan II*), 667 F.3d 273, 303 (3d Cir. 2011) (en banc) ("[A] district court '[c]onfronted with a request for settlement-only class certification' need not inquire whether

16

We now squarely hold that unnamed, putative class members need not establish Article III standing. Instead, the "cases or controversies" requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class. This rule is compelled by *In re Prudential* and buttressed by a historical review of representative actions.

It is well-established that "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 274 (2008). "[G]roup litigation has a remarkably deep history" dating back to medieval times. Stephen C. Yeazell, *The Past and Future of Defendant and Settlement Classes in Collective Litigation*, 39 Ariz. L. Rev. 687, 687 (1997); Stephen C. Yeazell, *From Medieval Group Litigation to the Modern Class Action* 21 (1987) (explaining that representative group litigation in medieval times was attributable to "societ[ies] pervasively organized in groups," such as "villages, parishes, [and] guilds"). As societies evolved, so did the characteristics and treatment of group litigation. One example is the English Chancery practice of the "necessary parties" rule of the seventeenth and eighteenth centuries, which "required that any person with an interest in the object of a suit be joined as

the case 'would present intractable management problems.'" (second alteration in original) (quoting *Amchem*, 521 U.S. at 620)). Given that standing is a threshold jurisdictional question, there is no reason to alter its application for a litigation class.

a party." Geoffrey C. Hazard, Jr. et al., *An Historical Analysis of the Binding Effect of Class Suits*, 146 U. Pa. L. Rev. 1849, 1858 (1998). The necessary parties rule had several exceptions, including the "impossibility exception," which covered "situations in which interested parties were so numerous that it was practically impossible to join them all." *Id.* at 1860; *see also Ortiz*, 527 U.S. at 832–33. The impossibility exception permitted representative suits, such as "bills of peace involving a common benefit to or burden upon the members of the group, . . . cases involving a group having creditor claims against a debtor or legatee claims against an estate, and cases involving unincorporated associations." Hazard, Jr. et al., 146 U. Pa. L. Rev. at 1861; *see also* W. S. Holdsworth, *The History of the Treatment of Choses in Action by the Common Law*, 33 Harv. L. Rev. 997, 1003 (1920) (discussing the gradual and partial allowance of personal rights of action to be asserted by representatives). Such representative actions, including the most widely-recognized bill of peace, were post-medieval developments in the long history of representative litigation. Yeazell, *From Medieval Group Litigation to the Modern Class Action*, at 24–25.

The history of representative actions under English law and how they crossed the pond to nineteenth-century America is marked by complexity. Yeazell, *From Medieval Group Litigation to the Modern Class Action*, at 213–37. Scholars mostly agree that representative actions under the law of this country can be traced back at least as far as Justice Joseph Story's *Commentaries on Equity Pleadings*. *Id.* at 216–20; Hazard, Jr. et al., 146 U. Pa. L. Rev. at 1878 (citing Joseph Story, *Commentaries on Equity Pleadings*, §§ 94–97, at 93–

18

98 (2d ed. 1840)).  In *Smith v. Swormstedt*, the Supreme Court recognized an exception discussed by Justice Story to the well-established rule that litigation is typically conducted on behalf of named parties.  *Smith v. Swormstedt*, 57 U.S. (16 How.) 288, 298 (1853).  The Court explained:

> [W]here the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of the others; and a bill may also be maintained against a portion of a numerous body of defendants, representing a common interest.

*Id.*  There was no mention of Article III, § 2—the Supreme Court focused on the *propriety* of the representative action itself and not whether there was truly a controversy (in the constitutional sense) between the feuding northern and southern wings of the Methodist Episcopal Church.  *Id.* at 303 ("The legal and equitable rights and liabilities of all being before the court by representation, . . . there can be very little danger but that the interest of all will be properly protected and maintained.").

Before the enactment of Rule 23 in 1937, federal courts were not consistent in their application of the equity rules governing representative actions.  *See* Equity Rule 38 (1912); Equity Rule 48 (1842); *Smith*, 57 U.S. (16 How.) at 298 (failing to reference and contradicting the then-governing Equity Rule 48); *Trustees v. Greenough*, 105 U.S. 527, 533 (1881) (making no reference to the basis for a representative suit but recognizing the ability of a plaintiff to

19

utilize a common fund to pay attorney's fees); Hazard, Jr. et al., 146 U. Pa. L. Rev. at 1902–10 (summarizing cases); Yeazell, *From Medieval Group Litigation to the Modern Class Action*, at 219 (The legitimacy of representative actions "could scarcely be questioned once an authority so eminent as Story had recognized it, though his confusion was reflected in the cases."). Yet during this time period it was never suggested that putative class members were required to have standing or that representative actions could not present a proper case or controversy.

In 1937, the Supreme Court promulgated the first version of Rule 23 along with the Federal Rules of Civil Procedure, which took effect in 1938. *See* John G. Harkins, Jr., *Federal Rule 23—The Early Years*, 39 Ariz. L. Rev. 705, 705–09 (1997). Rule 23 was drastically revised in 1966. Although the 1938 version of Rule 23 was meant to "encourage more frequent use of class actions," Charles A. Wright, *Class Actions*, 47 F.R.D. 169, 170 (1970), in 1966 the Advisory Committee reworked Rule 23 and "sought to catalogue in 'functional' terms 'those recurrent life patterns which call for mass litigation through representative parties,'" *Ortiz*, 527 U.S. at 833 (quoting Benjamin Kaplan, *A Prefatory Note*, 10 B.C. Indus. & Com. L. Rev. 497, 497 (1969)).

A review of the foregoing history reveals that the class action device treats individuals falling within a class definition as members of a group rather than as legally distinct persons. *Sosna v. Iowa*, 419 U.S. 393, 399 (1975) (reasoning that the "class of unnamed persons described in the certification *acquired a legal status separate from* the interest asserted by the [plaintiff]" (emphasis added)); *see*

20

*also* Hazard, Jr. et al., 146 U. Pa. L. Rev. at 1852–53 (analyzing the group treatment of members of a class as it relates to the doctrine of res judicata). Indeed, in *In re Prudential* we reasoned that the Supreme Court's decision in *Allee v. Medrano* was instructive in providing that "standing must be personal to and satisfied by 'those who seek to invoke the power of federal courts.'" *In re Prudential*, 148 F.3d at 306 (citing to *Allee*, 416 U.S. at 828 (quoting *O'Shea*, 414 U.S. at 493)).

Herein lies the key: a class action is a *representative* action brought by a named plaintiff or plaintiffs. Named plaintiffs are the individuals who seek to invoke the court's jurisdiction and they are held accountable for satisfying jurisdiction. *See Ortiz*, 527 U.S. at 832. Thus, a class action is permissible so long as at least one named plaintiff has standing. *See Horne v. Flores*, 557 U.S. 433, 446 & n.2 (2009); *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977) ("[W]e have at least one individual plaintiff who has demonstrated standing . . . . Because of the presence of this plaintiff, we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit."); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (class action does not eliminate a class representative's burden of establishing standing). Requiring individual standing of all class members would eviscerate the representative nature of the class action. It would also fail to recognize that the certified class is treated as a legally distinct entity even though the outcome of such an action is binding on the class. *See* Fed. R. Civ. P. 23(c)(3).

21

What Volvo asks of this Court is arguably in conflict with Supreme Court precedent permitting a representative action to persist despite a named plaintiff's claim becoming moot after certification. In the context of the doctrine of mootness, the Supreme Court has already recognized the representative nature of the class. For example in *Sosna v. Iowa*, the Supreme Court held a class action is not dismissed as moot if the named plaintiff had a live controversy when the suit was filed, a properly certified class action was pending, and there are members of the class whose claims are not moot. 419 U.S. at 399, 402–03. The Court did not require that *all* members have live claims and, instead, focused on there needing to be a "controversy" between *at least* "a named defendant and a member of the class." *Id.* at 402; *see also Franks v. Bowman Transp. Co.*, 424 U.S. 747, 755 (1976) (a properly certified class action "'clearly presented' the District Court and the Court of Appeals 'with a case or controversy in every sense contemplated by Art. III of the Constitution'" (quoting *Sosna*, 419 U.S. at 398)); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000) ("So long as a class representative has a live claim at the time he moves for class certification, neither a pending motion nor a certified class action need be dismissed if his individual claim subsequently becomes moot.").

The Supreme Court has also permitted representative standing of sorts in a variety of other contexts. *Horne*, 557 U.S. at 446 ("Because the superintendent clearly has standing to challenge the lower courts' decisions, we need not consider whether the Legislators also have standing to do so."); *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,

547 U.S. 47, 52 n.2 (2006) (declining to decide whether the individually named plaintiffs had standing because "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement"). A particularly apt example of this includes associational standing, whereby an organization may assert the rights of its members, provided: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wa. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). As to the first prong of the organizational standing test, the Supreme Court in *Hunt* required only that "*some* Washington apple growers" had suffered injuries. *Id.* (emphasis added); *see also Laidlaw*, 528 U.S. at 181–83 (reasoning that affidavits from *some* organization members were sufficient to establish that the association's "members would otherwise have standing to sue in their own right"). The clear import of that requirement is that in the associational standing context, the test ensures there is an actual case and controversy without inquiring into the standing of every member of an organization. Along this same line, the Supreme Court openly recognizes the ability of a State to bring suit in a *parens patriae* action. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982) (permitting a State to bring suit on behalf of its citizens where the State expresses a quasi-sovereign interest). The focus in a *parens patriae* action is on the State, "independent of the benefits that might accrue to any particular individual." *Id.* at 608.

23

Volvo urges this Court to adopt the approach taken by some of our sister courts that require all class members to possess standing. The Second and Eighth Circuits purportedly require absent class members to have Article III standing. The Ninth and D.C. Circuits potentially do too. We are not persuaded.

In *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006), the Second Circuit affirmed the district court's certification of a Rule 23(b)(3) class in a suit against professional tax advisors for improper and fraudulent tax counseling. *Id.* at 259. Two class objectors challenged certification on the grounds that the class contained members who had not yet been assessed tax penalties and therefore lacked Article III or statutory standing. *Id.* As to the standing challenge, the Court explained that "[w]e do not require that each member of a class submit evidence of personal standing. At the same time, no class may be certified that contains members lacking Article III standing. The class must therefore be defined in such a way that anyone within it would have standing." *Id.* at 263–64 (citations omitted). The Second Circuit has not expanded upon this declaration.

The Eighth Circuit in *Avritt v. Reliastar Life Insurance Co.* held that a California law that permitted a single injured plaintiff to bring a class action on behalf of a group of uninjured individuals was "inconsistent with the doctrine of standing as applied by federal courts." 615 F.3d 1023, 1034 (8th Cir. 2010). Yet the Court explained that "federal courts 'do not require that each member of a class submit evidence of personal standing.'" *Id.* (quoting *Denney*, 443 F.3d at

24

263–64).  Reconciling this tension, the Court reasoned that "[a] class 'must therefore be *defined* in such a way that anyone within it would have standing.'" *Id.* (emphasis added) (quoting *Denney*, 443 F.3d at 264).  More recently in *Halvorson v. Auto-Owners Insurance Co.*, the Court referenced these same general principles and explained that the lack of an individualized injury would impact *predominance* and mean that "individual questions necessary to determine breach of contract and bad faith" would include "individual inquiries" that would "predominate over" whether the defendant's processes were reasonable.  718 F.3d 773, 779 (8th Cir. 2013).  It is, thus, not clear to us whether the Eighth Circuit's standing analysis rests on Article III or Rule 23.

The D.C. Circuit has similarly discussed predominance as requiring that plaintiffs "show that they can prove, through common evidence, that *all* class members were in fact injured by [an] alleged conspiracy." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) (emphasis added) (reasoning that "common evidence [must] show all class members suffered *some* injury" but not saying that this was required pursuant to Article III).  And the Ninth Circuit in *Mazza v. American Honda Motor Co., Inc.* quoted the rule discussed in *Denney*.  666 F.3d 581, 594–95 (9th Cir. 2012).  But it did so within the context of a predominance challenge and without detailed discussion.  *Id.* Further, the *Mazza* court did not expressly overrule the Ninth Circuit's previous declaration that "our law keys on the representative party, not all of the class members." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020–21 (9th Cir. 2011)

(analyzing a defendant's Article III injury-in-fact argument while evaluating the district court's predominance ruling).

We decline Volvo's invitation to impose a requirement that all class members possess standing. Class actions are "exception[s] to the rule that litigation is usually conducted by and on behalf of the individual named parties only." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (quoting *Comcast*, 133 S. Ct. at 1432) (internal quotation marks omitted), *as amended* (Apr. 28, 2015). A Rule 23(b)(3) class "is an 'adventuresome innovation' of the 1966 amendments" to Rule 23, *Wal-Mart*, 131 S. Ct. at 2558 (quoting *Amchem*, 521 U.S. at 614), that allows named plaintiffs to bring suit when the procedural protections of Rule 23 are satisfied. The goal is to permit a class action that "would achieve economies of time, effort, and expense, and promote uniformity of decision *as to persons similarly situated*, without sacrificing procedural fairness or bringing about other undesirable results." Rule 23(b)(3), 1966 Amendment advisory committee note (emphasis added).

Before even getting to the point of class certification, however, class representatives need to present a justiciable claim. As we explained in *Holmes v. Pension Plan of Bethlehem Steel Corp.*, "a plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class." 213 F.3d at 135; *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether *the party invoking jurisdiction* had the requisite stake

26

in the outcome when the suit was filed." (emphasis added) (citing *Lujan*, 504 U.S. at 561)). Combined with the Supreme Court's guidance on mootness as applied to a class, we know that at all times during the course of a class action, there must be a live "case or controversy" for Article III purposes. *See Sosna*, 419 U.S. at 399, 402–03; *Franks*, 424 U.S. at 755.

Quite simply, requiring Article III standing of absent class members is inconsistent with the nature of an action under Rule 23.[5] When a Rule 23(b)(3) class-action complaint

---

[5] Similar reasoning has been used by our sister circuits that have also concluded that unnamed class members need not establish Article III standing. *See, e.g.*, *In re Nexium Antitrust Litig.*, 777 F.3d 9, 25, 30–31 (1st Cir. 2015) (concluding "that the presence of a de minimis number of uninjured class members is permissible at class certification" and would not defeat commonality or predominance); *Stearns*, 655 F.3d at 1020–21 ("'In a class action, standing is satisfied if at least one named plaintiff meets the requirements [of Article III]. . . . Thus, we consider only whether at least one named plaintiff satisfies the standing requirements.'" (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc))); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) ("Rule 23's certification requirements neither require all class members to suffer harm or threat of immediate harm nor Named Plaintiffs to prove class members have suffered such harm."); *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009) ("Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct.").

27

is filed, the unnamed class members are generally unknown. As the Seventh Circuit aptly explained:

> [A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown.

*Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009). Only after discovery (which may be limited by a district court at its discretion to issues related solely to class certification), will the court have before it specific facts bearing on the class and the relevant claims. Indeed, class discovery may itself focus on named representatives such that facts bearing on the Article III requirements for putative, unnamed class members never come to light. And after class certification, at least for a (b)(3) class, the class members cannot be identified until the opt-out period pursuant to Rule 23(c)(2)(B) has expired. In light of this, we do not expect a plaintiff to be "able to identify all class members at class certification." *Byrd*, 784 F.3d at 163. Yet class representatives must meet Article III standing requirements the moment a complaint is filed. *Lewis v. Casey*, 518 U.S. 343, 358 (1996); *Lujan*, 504 U.S. at 561.

Volvo's proposed requirement is likewise inconsistent with a Rule 23(b)(2) action. For a Rule 23(b)(2) class, "certification is appropriate even if the defendant's action or inaction 'has taken effect or is threatened only as to one or a

28

few members of the class, provided it is based on *grounds* which have general application to the class.'" *Devaughn*, 594 F.3d at 1201 (quoting Fed. R. Civ. P. 23(b)(2), 1966 Amendment advisory committee note). Technically speaking, those (b)(2) class members may not have suffered a legal injury and, at best, may only have standing in light of a threatened future injury. *See Clapper*, 133 S. Ct. at 1148, 1150 n.5.

Additionally, a properly formulated Rule 23 class should not raise standing issues. This point goes to the very purpose of the class action device—to save "the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). For those economies to work, it is axiomatic that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotation marks omitted)). These "interests" or "injuries" are tested by the requirements of Rule 23. These separate requirements establish the propriety of granting class-wide relief. *See Lewis*, 518 U.S. at 395 (Souter, Ginsburg, Breyer, JJ., concurring in part, dissenting in part, and concurring in the judgment) ("More specifically, the propriety of awarding classwide relief (in this case, affecting the entire prison system) does not require a demonstration that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs.").

29

Volvo's arguments related to the differences between claims among the separate statewide classes, which confuse distinct Rule 23 requirements, demonstrate that Volvo may have legitimate Rule 23 challenges.[6] Rather than shoehorn these questions into an Article III analysis, we will continue to employ Rule 23 to ensure that classes are properly certified. In this case, certification requires the District Court to determine what differing factual and legal circumstances might mean for the class: Can the named plaintiffs adequately represent the class if they owned or leased vehicles that did not suffer water damage pursuant Fed. R. Civ. P. 23(a)(4)? Are the claims of the representatives typical of the class pursuant to Fed. R. Civ. P. 23(a)(3)? And do any relevant distinctions affect the commonality and predominance analyses pursuant to Fed. R. Civ. P. 23(a)(2) and (b)(3)? *See* 7AA Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 1785.1 (3d ed. 2014) ("[T]he question whether [a class representative] may be allowed to present claims on behalf of others who have similar, but not identical, interests depends

---

[6] Volvo's standing argument dispatches a profusion of class-action buzzwords including overbreadth, class definition, commonality, ascertainability, as well as citation to the injury-in-fact required to establish Article III standing, the Rules Enabling Act's dictate that federal rules may not "abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b), and a defendant's "due process right to raise individual challenges and defenses to claims," *Carrera*, 727 F.3d at 307. Volvo Br. 34–41. At oral argument, it became apparent that Volvo was focused on the issue of standing.

not on standing, but on an assessment of typicality and adequacy of representation.").

Focusing on certification questions is not only necessary to the rigorous analysis we demand in class certification decisions, it is also buttressed by a close analysis of the "circuit split" on this issue. Many courts are in fact dealing with Article III standing questions *within* the confines of Rule 23, which raises serious doubts as to whether they really mean to impose Article III standing as separate and distinct analyses in these cases. *See In re Nexium Antitrust Litig.*, 777 F.3d at 25, 30–31 (discussing uninjured class members in terms of the class definition, ascertainability, commonality, and predominance); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d at 252 (predominance); *Stearns*, 655 F.3d at 1020–21 (predominance); *Avritt*, 615 F.3d at 1034 (class definition); *Kohen*, 571 F.3d at 677 (summarizing cases on class definition); *Denney,* 443 F.3d at 264 (class definition).

In sum, so long as a named class representative has standing, a class action presents a valid "case or controversy" under Article III.

**B.**

Although Volvo's standing argument fails, we will nevertheless remand. Volvo mentions in a footnote that the District Court's certification order "did not specifically identify the claims certified, as required by *Wachtel v. Guardian Life Insurance Co. of America*, 453 F.3d 179, 184 (3d Cir. 2006)." Volvo Br. 4 n.2. We agree that this is a

problem requiring remand. The District Court's class certification opinion rejected Plaintiffs' proposal of a nationwide class and the application of New Jersey law to all Plaintiffs' claims. And although the District Court directed that "the law of the state of each subclass should be applied to the subclass's claims," JA 77, the District Court did not identify which claims would be subject to class treatment. Volvo noted this lack of specificity and it assumed that the District Court meant "to certify all claims alleged in the [Second Amended Complaint] when it granted the alternative motion to certify six statewide classes." Volvo Br. 4 n.2. Plaintiffs argue that the District Court was sufficiently specific, citing to the District Court's commonality analysis (which also did not identify specific state-law claims subject to class treatment), the District Court's general reference to disputes of fact that justified denying Volvo's motions for summary judgment, and the class certification order that defined the classes and class representatives.

In *Wachtel* we held that "Rule 23(c)(1)(B) requires district courts to include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment." 453 F.3d at 184. We rejected the practice of issuing "memorandum opinions discussing the allegations in the complaint, the facts of the case, and some combination of the substantive requirements for class certification found in Rule 23(a) and (b)" that then go on to "treat the parameters of the class itself much more clearly and deliberately than the class claims, issues, or defenses." *Id.* We stated that Rule 23(c) "requires more specific and more deliberate treatment of the class issues, claims, and defenses

32

than the practice described above." *Id.* at 185. Thus a class-certification order or an incorporated opinion "must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." *Id.* at 187–88.

Although a motion for class certification presents a discretionary question for a district court, the court "must clearly articulate its reasons, in part, so we can adequately review the certification decision on appeal under Rule 23(f)." *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006) (remanding because of difficulty discerning the district court's analysis on typicality and adequacy). For example, in *Marcus v. BMW of North America, LLC*, we rejected the district court's certification order and accompanying opinion because although the opinion did address "Marcus's claims and the issues presented," there was no "'readily discernible, clear, and complete list'" of the claims and issues subject to class treatment. 687 F.3d 583, 592 (3d Cir. 2012) (quoting *Wachtel*, 453 F.3d at 187). We are not required to comb through the District Court's opinion and layers of briefing in order to "cobble together the various statements . . . and reach a general inference as to some categories of issues that the District Court believes are appropriate for class treatment." *See Wachtel*, 453 F.3d at 189.

Here Plaintiffs' proposed classes and claims in the Second Amended Complaint were different from those in the motion for class certification. Plaintiffs also conceded at oral argument that they intended for the Class Vehicles to include

33

only those which actually have a sunroof. This lack of clarity, combined with the District Court's failure to address in detail or list the precise claims subject to class treatment, means that we would be required to engage in some level of guesswork were we to try to piece together the class claims. We will not attempt to do so. We will vacate and remand to the District Court so that it can provide a complete list of the class claims, defenses and issues for each of the six statewide classes in accordance with what *Wachtel* requires.

## C.

Volvo disputes whether Plaintiffs satisfied Rule 23(b)(3)'s predominance requirement. Volvo argues that the District Court erred by certifying six statewide classes without analyzing those classes' claims and whether those claims were subject to common proof. Although precise analysis of the predominance question is "best conducted with the benefit of a clear initial definition of the claims, issues, and defenses to be treated on a class basis," *see Wachtel*, 453 F.3d at 181 n.1, the District Court erred in making a fundamental assumption about predominance. That assumption was that our decision in *Sullivan v. DB Investments, Inc.* (*Sullivan II*) governed the outcome of this case.

"[T]he party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Byrd*, 784 F.3d at 163. A district court must rigorously analyze the evidence used to establish class certification in order to ensure compliance with Rule 23(a)

34

and at least one of the subsections of Rule 23(b). *Comcast*, 133 S. Ct. at 1432. This rigorous analysis may require a district court to address, at least in part, the merits of a plaintiff's underlying claim because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2552) (internal quotation marks omitted).

Before certifying a Rule 23(b)(3) class, a district court must evaluate whether, *inter alia*, "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This predominance test asks whether common issues of law or fact in the case predominate over non-common, individualized issues of law or fact. *See Marcus*, 687 F.3d at 604. Predominance "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011); *see also Wal-Mart*, 131 S. Ct. at 2552 (analyzing commonality in light of the elements of the plaintiff's Title VII discrimination claims); *Marcus*, 687 F.3d at 600 ("To assess predominance, a court at the certification stage must examine each element of a legal claim 'through the prism' of Rule 23(b)(3)." (quoting *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011))); *Malak v. BDO Seidman, LLP*, 617 F.3d 743, 746 (3d Cir. 2010) (explaining that each element of a legal claim is relevant to assessing predominance). That is "[b]ecause the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual" and that means that "a district court must formulate some

35

prediction as to how specific issues will play out." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005) and *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008)) (internal quotation marks omitted), *as amended* (Jan. 16, 2009); *see also Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1191–92 (2013) (beginning the Rule 23 analysis with the elements of a private securities-fraud action under § 10(b) of the Securities Exchange Act of 1934).

"[T]he presence of individual questions does not *per se* rule out a finding of predominance." *In re Prudential*, 148 F.3d at 315. If issues common to the class overwhelm individual issues, predominance should be satisfied. *Amgen*, 133 S. Ct. at 1196 (explaining that predominance involves a qualitative assessment of common versus individualized questions); *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (explaining that predominance is not determined "simply by counting noses: that is, determining whether there are more common issues or more individual issues"). Further, predominance does not require that common "questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191. "What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members.'" *Id.* at 1196 (alteration in original) (quoting Fed. R. Civ. P. 23(b)(3)).

The District Court's predominance analysis relied on *Sullivan II* for the proposition that "for consumer fraud claims, the predominance inquiry focuses on whether the

defendant's conduct was common to all class members, which predominates over minor individual differences between plaintiffs." JA 83 (citing *Sullivan II*, 667 F.3d at 297–98). Because "[a]ll of the claims asserted by Plaintiffs in the [Second Amended Complaint] are based upon defectively designed sound traps contained in the sunroof drainage systems in Class Vehicles designed and/or manufactured by Defendants, and Defendant[s'] uniform omissions about the same," the District Court concluded that predominance was satisfied. *Id.* In doing so, the District Court made no distinction between the six statewide classes or the relevant claims brought by those putative classes.[7]

---

[7] The District Court also said the predominance requirement was "readily met" "as discussed *supra*." JA 83. The only relevant previous discussion was the District Court's evaluation of commonality. The District Court stated that the common questions included whether: (1) "the sunroof drainage systems in the Class Vehicles are defective"; (2) "Defendants knew of the defect but failed to disclose it to the Class"; and (3) "the maintenance instructions were inadequate and/or uniformly deficient." JA 78. Rejecting Volvo's commonality challenge, the District Court stated that the "issue is whether the design of the sunroof drainage system was defective, not whether the existence of the alleged defect resulted in a clogged drain tube causing water to spill into the vehicle." JA 79.

The District Court's commonality analysis was of limited import for the question of predominance. We have previously noted that the Rule 23(b)(3) predominance

Volvo argues that the District Court's reliance on *Sullivan II* was in error because that decision involved a settlement class. One cannot read *Sullivan II* as a wholesale departure from precedent that requires a district court to evaluate predominance in light of the claims asserted and relevant evidence. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 379 (3d Cir. 2013) (*Sullivan II* did not "lessen[] the burden required to demonstrate that putative class members share a common question of law or fact."). Indeed, *Sullivan II* cited to *In re Hydrogen Peroxide Antitrust Litigation* for the proposition that "an examination of the elements of plaintiffs' claim is *sometimes necessary* . . . to determine whether the requirements of Rule 23—namely, that the elements of the claim can be proved 'through evidence common to the class rather than individual to its members'— are met."  667 F.3d at 306 (emphasis added) (quoting *Hydrogen Peroxide*, 552 F.3d at 311–12). *Sullivan II* thus applied the *Hydrogen Peroxide* test to fit the circumstances of that particular case. *Id.* at 302–04. In *Sullivan II*, looking at the class claims was "particularly unwarranted in the settlement context since a district court need not 'envision the form that a trial' would take, nor consider 'the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove' the disputed element at

requirement incorporates the Rule 23(a)(2) commonality requirement. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004). The inverse of this proposition, that the commonality requirement satisfies predominance, is not true because the "predominance criterion is far more demanding." *Amchem*, 521 U.S. at 624.

trial." *Id.* (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir. 2001) and *Hydrogen Peroxide*, 552 F.3d at 312). *Sullivan II* is not sufficiently analogous to the case at bar, nor did it obviate the need to evaluate the claims and evidence asserted in order to evaluate predominance for a litigation class.[8] *See Halliburton*, 131 S. Ct. at 2184; *Hydrogen Peroxide*, 552 F.3d at 311. The District Court erred, therefore, by failing to analyze predominance in the context of Plaintiffs' actual claims.

Plaintiffs make several arguments in support of the District Court's opinion, none of which are persuasive. Plaintiffs first argue that the District Court considered over 1,000 pages of briefing on the motions for summary judgment, and that therefore, the District Court must have considered the individual elements of the various state-law claims. Yet relying on such briefing alone hardly amounts to the "rigorous consideration of all the evidence and arguments offered by the parties" required by Rule 23. *See Hydrogen Peroxide*, 552 F.3d at 321. Quite simply, what Plaintiffs ask us to do is speculate as to what the District Court must have

---

[8] Volvo also argues that even if *Sullivan II* applies to Plaintiffs' consumer fraud claims, the District Court ignored the predominance inquiry for the common law fraud, breach of implied warranty, breach of express warranty, and breach of the implied covenant of good faith and fair dealing claims. For the reasons explained above, *Sullivan II* does not obviate the need for Plaintiffs to establish by a preponderance of the evidence that the predominance requirement is satisfied.

39

intended. We cannot just assume the District Court conducted the appropriate analysis under Rule 23. "Rigorous analysis" requires more of the District Court than that, and we would be abdicating our role as a reviewing court were we to engage in the speculation Plaintiffs ask for.

Plaintiffs also argue that Volvo's specific examples related to the statewide classes do not defeat predominance. Like the common law claims raised by the plaintiffs in *Marcus*, 687 F.3d at 600–05, Plaintiffs assert class claims based on breach of express warranty (Count 2), breach of the implied warranty of merchantability (Count 3), and breach of the duty of good faith and fair dealing (Count 5). In addition, Plaintiffs assert claims based on the New Jersey Consumer Fraud Act ("NJCFA"), as was the case in *Marcus*, 687 F.3d at 605–11, as well as state-specific consumer fraud claims under Massachusetts, New Jersey, Florida, California, and Hawaii law.

Volvo points to, as examples of why the District Court erred in not evaluating the elements of each asserted claim, the following potential predominance problems: (1) individualized proof is needed to establish a causal relationship between the unlawful conduct and ascertainable loss as required under New Jersey and Massachusetts law; (2) the California claims require a plaintiff to establish a duty to disclose an alleged defect, proof of which would vary based on whether a vehicle contained a yaw sensor and whether such disclosure would be material; (3) the implied warranty claims cannot satisfy predominance for reasons similar to those we addressed in *Marcus* relating to causation; (4) claims for a violation of an express warranty require that

40

the warranty be in place when a plaintiff experienced a water leak, which is only established by individualized proof; and (5) uniform evidence cannot be used to establish predominance as to both new and used owners of Class Vehicles because the applicable warranties between the groups may vary.

Evaluating these arguments in the detail that is required goes beyond what was briefed before the District Court, beyond the District Court's reasoning in its certification opinion, and beyond the briefing the panel has received from the parties. We will not engage in an analysis of predominance in the first instance, and will therefore remand these questions to the District Court. Consistent with *Marcus*, 687 F.3d at 600–11, the District Court should evaluate the relevant claims (grouping them where logical and appropriate) and rule on the predominance question in light of the claims asserted and the available evidence.[9]

---

[9] In *Marcus*, a New Jersey class asserted four claims against BMW and Bridgestone relating to the NJCFA, breach of the implied warranty of merchantability, breach of contract, and breach of the implied covenant of good faith and fair dealing. 687 F.3d at 600. Like the trial court, we analyzed Marcus's common law claims together and noted the shared elements between the claims. *Id.* at 600 & n.8. Despite concluding that Marcus supplied sufficient evidence to establish predominance as to a defect in the Bridgestone run-flat tires, we concluded that the individualized evidence required to prove proximate causation meant that the common law claims could not be tried on a class-wide basis. *Id.* at

**D.**

Volvo's final argument is that the District Court erred in denying the motion to reconsider the class certification decision in light of *Comcast*. Because *Comcast* was distinguishable and the "damages issue [in this case was]

---

605. We explained that Marcus's damages allegations "beg the question of what caused class members' tires to go flat and need replacement." *Id.* at 604.

As to Marcus's claim under the NJCFA, we noted that the statute required a plaintiff to establish ascertainable loss. *Id.* at 605–06. We explained that "ascertainable loss" based on "the cost of replacing [a] tire" could not meet the predominance requirement and went on to analyze loss based on "the value of the product [a class member] expected to purchase minus the value of the product they actually purchased." *Id.* at 606. We explained that under that theory of "ascertainable loss," a court could not apply a "presumption of causation" without considering both "the defendants' course of conduct . . . [and] also that of the plaintiffs." *Id.* at 606–10. Specifically, we held that the district court needed to have found "(1) that the alleged defects were not knowable to a significant number of potential class members before they purchased or leased their BMWs, or (2) that, even if the defects were knowable, that class members were nonetheless relatively uniform in their decisionmaking." *Id.* at 611. We directed the district court to conduct this analysis in the first instance. *Id.*

42

much more straightforward," JA 91, the District Court declined to revisit its ruling, *see id.* at 90–92.

*Comcast* is inapposite to the case before us. *Comcast* held that an antitrust litigation class could not be certified because the plaintiffs' damages model did not demonstrate the theory of antitrust impact that the district court accepted for class-action treatment. 133 S. Ct. at 1433. Because the antitrust claim was so limited, the Supreme Court explained:

> It follows that a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3). Calculations need not be exact, *see Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931), but at the class-certification stage (as at trial), any model supporting a "plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed. 2010); *see, e.g.*, *Image Tech. Servs. v. Eastman Kodak Co.,* 125 F.3d 1195, 1224 [9th Cir. 1997]. And for purposes of Rule 23, courts must conduct a "'rigorous analysis'" to

43

> determine whether that is so. *Wal-Mart*, [131 S.
> Ct. at 2551–52].

*Id.* *Comcast* went on to analyze the evidence of damages resulting from antitrust impact, and noted that the expert testimony "assumed the validity of all four theories of antitrust impact initially advanced by [the plaintiffs]." *Id.* at 1434. Because the evidence could not translate the relevant "'*legal theory of the harmful event* into an analysis of the economic impact *of that event*,'" the Court determined that common questions could not predominate over individual ones. *Id.* at 1435 (quoting Federal Judicial Center, *Reference Manual on Scientific Evidence* 432 (3d ed. 2011)).

Volvo relies on *Comcast* for the proposition that Plaintiffs must show that "'damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).'" Volvo Br. 44 (quoting *Comcast*, 133 S. Ct. at 1433). In so doing, Volvo selectively quotes from *Comcast* as though the Court were creating a broad-based rule applicable to Rule 23(b)(3). Yet the Supreme Court specifically noted that it was not breaking any new ground by stating at the beginning of its opinion: "This case thus turns on the straightforward application of class-certification principles." *Comcast*, 133 S. Ct. at 1433. A close reading of the text above makes it clear that the predominance analysis was specific to the antitrust claim at issue. That is eminently sensible. Every question of class certification will depend on the nature of the claims and evidence presented by the plaintiffs. What we know for sure is that whatever "*Comcast*'s ramifications for antitrust damages models or proving antitrust impact," a trial court must "'consider

44

carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met before certifying a class.'" *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 186–87 (3d Cir. 2015) (quoting *Hydrogen Peroxide*, 552 F.3d at 320).

Our reading of *Comcast* is consistent with decisions by several of our sister courts.[10] That is because "[r]ecognition

---

[10] *See, e.g.*, *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015) ("We hold that *Comcast* does not mandate that certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of measurement on a classwide basis."); *In re Nexium Antitrust Litig.*, 777 F.3d at 23 ("*Comcast* did not require that plaintiffs show that all members of the putative class had suffered injury at the class certification stage—simply that at class certification, the damages calculation must reflect the liability theory."); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013) (explaining that *Comcast* did not impact the ability of a trial court to certify a liability class and then later consider class damages under Fed. R. Civ. P. 23(c)(4)), *cert. denied sub nom. Whirlpool Corp. v. Glazer*, 134 S. Ct. 1277 (2014); *Butler*, 727 F.3d at 800–01 (emphasizing that *Comcast* focused on "the requirement of predominance and on its having to be satisfied by proof presented at the class certification stage rather than deferred to later stages of the litigation" (citing *Comcast*, 133 S. Ct. at 1432–33)); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013) (vacating and remanding a district court's certification decision to more fully consider the predominance

45

that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal." *Comcast*, 133 S. Ct. at 1437 (Ginsburg, J. & Breyer, J., dissenting) (citing 2 William B. Rubenstein, *Newberg on Class Actions* § 4:54 (5th ed. 2012)). Had the District Court ruled as Volvo requested, denying certification on that basis

requirement, but noting that even after *Comcast* "there are ways to preserve the class action model in the face of individualized damages"); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (interpreting *Comcast* as requiring that "the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability" and that rule is satisfied where "damages will be calculated based on the wages each employee lost due to Medline's unlawful practices").

The D.C. Circuit has interpreted *Comcast* as requiring proof of class-wide damages in the context of an antitrust class, explaining: "It is now indisputably the role of the district court to scrutinize the evidence before granting certification, even when doing so 'requires inquiry into the merits of the claim.'" *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d at 253 (quoting *Comcast*, 133 S. Ct. at 1433). The Court went on to summarize that the specific proffered expert models were essential to the plaintiffs' evidence of class-wide injury, concluding "[n]o damages model, no predominance, no class certification." *Id.* One could read this analysis out of context as saying that all classes require a damages model; however, like *Comcast*, the analysis as to class-wide damages was specific to that antitrust claim.

46

alone would have amounted to an abuse of discretion. *See Roach*, 778 F.3d at 409. In sum, and as explained by the Fifth Circuit, it is "a misreading of *Comcast*" to interpret it as "preclud[ing] certification under Rule 23(b)(3) in any case where the class members' damages are not susceptible to a formula for classwide measurement." *In re Deepwater Horizon*, 739 F.3d at 815 & n.104.

## IV.

The difficult questions raised in this appeal are resolved by a return to the basics of Rule 23. We will vacate and remand the District Court's class certification decision to allow the District Court to define the class membership, claims, and defenses, and so that it may rigorously analyze predominance in the first instance.